[No 1219. Decided November 26, 1894.]

THE BOSTON NATIONAL BANK OF SEATTLE, *Appellant, v.*
THOMAS JOSE and ALONZO JOSE, *Respondents.*

PROMISSORY NOTES—PAYMENT—EXTENSION—DISCHARGE OF SURE-
TIES.

The acceptance by a bank of a renewal note executed by a part
only of the makers on the original note held by the bank, does not
constitute a payment of the original note, when it is shown that the
bank did not intend to treat the transaction as such unless all the
makers on the original note should sign the renewal, and that the
makers had never called upon the bank for the surrender of the
original.

The fact that the principals upon a note in bank pay a portion of
the sum due thereon, and execute another note for the balance, pay-
able in ninety days, which the bank receives with the understanding
that it is to be signed by the sureties upon the original note, will not
constitute an extension of the time of payment of the original note,
until the complete execution of the renewal note as contemplated by
the parties.

Where a payee, at the time of extending the time of payment of
a promissory note, reserves his rights against sureties thereon, the
extension will not operate as a discharge, although the sureties may
not have been notified.

There is no presumption that the taking of a new promissory note
by a bank in place of one which has become due, is a payment of the
matured note, but payment in such case is a question of fact, depend-
ing upon the intention of the parties.

*Appeal from Superior Court, King County.*

*Strudwick & Peters,* for appellant.

*Turner & McCutcheon,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—This action was brought by appellant
against S. D. Gustin, George W. Tibbetts, Thomas Jose and
Alonzo Jose, partners, under the firm name of Jose & Son,
to recover the balance due on a promissory note for $2,500,

executed and delivered by said defendants to appellant on November 23, 1890.

The complaint alleged the execution of the note, and that no part thereof had been paid except the sum of $1000 on account of principal, and certain other sums as interest, paid thereon at dates specified therein, and demanded judgment against the defendants for the sum of $1,500, with interest thereon from November 8, 1891, and for attorney's fees and for costs. The defendants Gustin and Tibbetts, although duly served with process, did not appear in the action, and the plaintiff took judgment against them by default.

The defendants, Jose & Son, appeared and filed an answer. They did not controvert any of the allegations of the complaint, but averred as affirmative defenses:

First, that they joined as makers of the note described in the complaint for the accommodation merely of their co-defendants, S. D. Gustin and George W. Tibbetts; that they never had any interest in the consideration and never received any benefit directly or indirectly by the execution or delivery of said note, and that plaintiff knew when said note was delivered to and received by it that these defendants were in fact sureties only for their said co-defendants upon it; that at or after the maturity of said note the plaintiff in consideration of money paid to it by their said co-defendants for the future use by them of the principal of said promissory note for some months thereafter, bound itself to allow their said co-defendants that time to make payment and prolonged the payment accordingly; that these defendants did not know of said transaction between their co-defendants respecting said prolongation of time nor have they ever assented thereto, or ratified the same or acquiesced therein or waived the right to take advantage thereof; and,

Second, that on the 24th day of February, 1891, their said co-defendants made a certain promissory note in writing of that date and delivered the same to plaintiff, and thereby further promised to pay to plaintiff or order, ninety days after said date $2,500, with interest at one per cent. per month from

maturity until paid, and thereby further promised to pay plaintiff $100 as attorney's fees in case suit should be instituted to collect said note, or any part thereof, and that said promissory note was delivered to and received by plaintiff in payment of the promissory note described in the complaint; that at or about the maturity of said note of February 24, 1891, to-wit, about June 1, 1891, the said co-defendants of these defendants paid to plaintiff $1,000 in money as a partial payment of said promissory note, and about that time made their other promissory note of about that date, and delivered the same to plaintiff, and thereby promised to pay to the order of plaintiff about ninety days after that date $1,500, with interest and attorney's fees, and that the promissory note last above described was then delivered to and received by plaintiff in payment of the residue of said promissory note of February 24, 1891, and that in addition to the payments mentioned said co-defendants of these defendants also paid to plaintiff, at the several times of the making and delivery of said promissory notes, certain items of interest or discount, the actual amount of which is to these defendants unknown.

The plaintiff in its reply denied the allegations in the answer showing that the defendants were sureties for the co-defendants Gustin and Tibbetts, and the extension of the time of payment of the note in suit; admitted the making of the note of February 24, 1891, as alleged, but denied that it was ever delivered to or received by plaintiff in payment of the promissory note described in the complaint, or otherwise; admitted that said Gustin and Tibbetts, on May 26, 1891, paid to plaintiff $1,000, but denied that said payment was made on account of the said promissory note of February 24, 1891, or otherwise than as a payment on the promissory note described in the complaint, and admitted that on May 25, 1891, the said Gustin and Tibbetts made a further note for $1,500, as alleged, but denied that the same was delivered to or accepted by plaintiff in payment of the residue of said note, or otherwise.

The jury returned a verdict in favor of Jose & Son, which

the plaintiff moved the court to set aside and for a new trial on the grounds (1), that the evidence was insufficient to justify the verdict, and that the same was against law, and (2), error of law occurring at the trial and excepted to at the time by the plaintiff. The motion was denied and the plaintiff duly excepted to the ruling of the court. There was judgment for said defendants, and the plaintiff brings the case here for review.

There are some undisputed facts and circumstances, showing how the defendants in this action came to execute the note in controversy, which it is proper to state, before proceeding to discuss the errors assigned, as they tend, to some extent at least, to throw light upon subsequent transactions which will hereafter be considered. They are these : On February 26, 1890, one W. W. Beck and twelve others, including the defendants Gustin and Tibbetts, gave their note to the defendants Jose & Son for $3,500, payable ninety days after date. This note was negotiated at the plaintiff bank, and was thereupon endorsed by Jose & Son and Samuel D. Gustin and Geo. W. Tibbetts in the order named. When this note fell due it was not paid, but Gustin and Tibbetts paid $500, and thereupon, on May 27, 1890, the said Gustin and Tibbetts and Jose & Son gave to the plaintiff a note for $3,000, due ninety days after date. On August 25, 1890, said Gustin and Tibbetts paid $500, which was credited upon the note of February 26, 1890, and the said note for $3,000 was surrendered, upon the execution of another note to plaintiff by the same parties for the sum of $2,500, due three months after date, which was August 25, 1890. This note was not paid at maturity but on November 23, 1890, the note in suit was executed for the same amount, signed by said Gustin and Tibbetts and said Jose & Son, and thereupon the plaintiff surrendered to the makers thereof the said note of August 25, 1890. On February 25, 1891, the said Gustin and Tibbetts signed and delivered to plaintiff a note for $2,500, due three months after date, which defendants Jose & Son did not sign. On May 20, 1891, the said Gustin and Tibbetts paid to the plaintiff $1,000, which

was credited by plaintiff upon the note of February 26, 1890, and also upon the note in suit, and on May 25, 1891, the said Gustin and Tibbetts delivered to appellant another note for $1,500, which the defendants Jose & Son did not sign. These last two notes are the notes mentioned in the answer of the respondents. The note in suit was not surrendered to the sureties at the time of the execution of either of these last mentioned notes, nor was any demand made by any one for its surrender.

From what we have stated it will be seen that the respondents endorsed the note of February 26, 1890, and signed as makers each subsequent note up to and including the one in suit, but that neither of the two later notes described in their answer were executed by them.

The respondents relied entirely at the trial upon the giving and receiving of these last two notes, together with the attendant facts and circumstances, to establish the affirmative defenses set forth in their answer. And the appellant contends that the evidence is wholly insufficient as to each of said defenses, to justify the verdict of the jury, and that the court therefore erred in denying the motion for a new trial, and we are of the opinion that the position is well taken. While the evidence fairly shows that the respondents signed the several notes upon which their names appear for the accommodation of Gustin & Tibbetts, and were, therefore, as to them, merely sureties, we are constrained to conclude that it is entirely insufficient to justify a finding by the jury that the respondents were discharged either by payment or extension of time. It was alleged in the answer of the respondents that the note of February 24, 1891, for $2,500, was given and received in payment of the note upon which this action is based, and that the note of May 25, 1891, for $1,500, was given to and received by appellant in payment of the residue of said note of February 24, 1891. But the proof clearly shows that it was the understanding of all the parties thereto that this last mentioned note, like the previous one, should be signed by Jose & Son, and that it was not to operate either as payment or as an extension of

time until so signed.   The defendant Tibbetts testified that he requested Mr. Jose to go to the bank and sign the note, and he promised to do so, and that he did not know why he did not.   The respondent Alonzo Jose also testified that Mr. Tibbetts asked him, down on the street after the note was given, to sign it, and that he said he would go up to the bank, and that he did go there and no one said anything about the note, and he walked away.   And Mr. Brooks, cashier of appellant bank, testified:

Q.   "Did you agree with them (Gustin and Tibbetts) in regard to any extension before Jose & Son should have signed the note?"

A.   "I agreed to no extension that was not secured by a complete note, that note must be complete before I accepted it.   Without Mr. Jose's signature it was not complete."

This is substantially all of the testimony in regard to the making and delivery of this note, and it certainly fails to prove either payment or an extension of the time of payment of the note in controversy in this action.   It is true that a transcript of appellant's book of bills receivable was introduced in evidence, from which it appears that every note of the series mentioned was noted in the column "Notes Paid," as a payment of the preceding one, but it also appears therein that each note so entered as paid is described as the note of Gustin and Tibbetts and Jose & Son. Taken altogether, therefore, this transcript from the books is entitled to little, if any, weight as evidence upon one side or the other, in view of the positive and uncontradicted testimony of all the parties to the transaction in question.

We think this note never represented the understanding of the parties—in fact never became a completed instrument—and was, therefore, ineffectual for any purpose.   Indeed, it is frankly conceded by the learned counsel for the respondents that if there had been no other transaction between the parties after this note was given, the appellant might be entitled to recover from the respondents, but they insist that the receiving of the $1,500 note of May 25, 1891,

was in fact an extension to Gustin and Tibbetts, the principal debtors, of the time of payment of the note in suit, and that the respondents were thereby rightfully discharged from their obligation. This contention is based upon the testimony of Mr. Tibbetts, which was to the effect that about a week before the making of the note he went to the bank and saw Mr. Brooks, the cashier, and told him he would arrange it so as to pay $1,000 on the $2,500, that "we wanted to renew for ninety days and give the note for $1,500, and I was confident we would not have to ask for a renewal because at that time I thought I saw my way clear, certain we would pay the $1,500 by the expiration of ninety days, and at that time there was nothing said—any way Mr. Brooks said it would be all right, and I signed. When we renewed Mr. Gustin and me went in and signed the note." He further testified that at the time the note was made and left with the bank Mr. Jose was not there, and nothing was said at all in regard to Jose & Son signing it, and that he never requested them to do so.

As before stated the note in suit was not taken up, and the testimony seems positive on the part of the bank that it was not considered paid or affected by these subsequent notes. Mr. Chapin, the President of the Bank, says it was understood all along that Jose & Son were to sign these notes, and that he spoke to Mr. Jose about it, and that the latter said, in substance, at one time, that he did not know whether he ought to do so or not, and at another, that he was informed that he was not liable thereon. Mr. Jose states, in effect, that he does not recollect having made these declarations.

Mr. Chapin further states that it was known by the bank, at the time these last two notes were executed, that Gustin and Tibbetts were insolvent, and that the bank never intended to extend the time of payment of the note in question or to receive either of the notes dated respectively February 24 and May 25, 1891, as payment. The mere circumstance that the officers of the bank may not have requested Gustin and Tibbetts to have Jose & Son sign the last note, at the

time it was given, is not sufficient, in view of the opposing facts and circumstances, to show that it was a payment or renewal of any former note. Whether it was or was not such payment was a question of intention between the parties to the note. And we think the evidence entirely fails to prove such an intention.

At the trial the plaintiff requested the court to charge the jury as follows:

"If the jury are satisfied from the evidence that such an extension as is mentioned in the preceding instruction was made by the plaintiff to Gustin & Tibbetts, yet the jury are instructed that such extension would not operate to discharge Jose & Son from their liability on said note though they were but sureties, if the plaintiff at the time of the extension, as aforesaid, reserved its rights against the sureties."

The court, in giving this instruction, modified it by adding thereto the words "and notified them of that fact at the time of such extension." This was error. Byles on Bills (Woods' ed.), *256; *Morse v. Huntington*, 40 Vt. 488; *Potter v. Green*, 6 Allen, 442; *Tobey v. Ellis*, 114 Mass. 120.

As to payment of notes by renewals the court instructed the jury:

"When a bank takes a note, a new note in place of one which has become due and matured, the law presumes that a payment of the note; that presumption can be rebutted, however, by testimony showing a different agreement between the parties; but without any agreement it is presumed to be a payment."

Appellant claims that this was also error. Upon this question the decisions are not harmonious, but we are inclined to the opinion that the great weight of authority is in favor of appellant's position, that payment is not presumed in such cases, but is a question of fact depending upon the intention of the parties. 2 Parsons, Notes and Bills, pp. 150 to 153, and notes; Byles on Bills (Woods' ed.), *386; *Brown v. Olmsted*, 50 Cal. 162; 5 Lawson, Rights, Rem. and Prac., § 2537; *Muldon v. Whitlock*, 1 Cow. 290 (13 Am. Dec. 533–537); *Blunt v. Walker*, 11 Wis. 334 (78 Am. Dec. 709).

For the errors indicated the judgment is reversed and the cause remanded for a new trial.

HOYT, STILES and SCOTT, JJ., concur.