[No. 24514. Department Two. September 7, 1933.]

ALMA HINK, *Appellant,* v. ELSE MEHLHORN, *Respondent.*[1]

[1]Reported in 24 P. (2d) 1061.

352

*McMicken, Ramsey, Rupp & Schweppe* and *J. Gordon Gose,* for appellant.

*Roberts, Skeel & Holman* and *W. E. Evenson,* for respondent.

MAIN, J.—This action was brought to foreclose a real estate mortgage. The defendant Else Mehlhorn answered, and, by cross-complaint, pleaded a prior mortgage and alleged that it was superior in right. With the other defendants, we are not here concerned, and no mention will be made of them. The cause was tried to the court without a jury, and resulted in a judgment foreclosing the plaintiff's mortgage, but adjudging that it was subordinate to that of the defendant named. From this judgment, the plaintiff appeals.

The facts which will present the questions to be determined may be summarized as follows: Osner & Mehlhorn was a corporation, with its principal place of business in Seattle, and the transactions here involved were conducted by August Mehlhorn, one of its officers. The respondent, Else Mehlhorn, was the wife of August Mehlhorn. One Francis Sherry resided in Seattle, and there owned a lot or tract of ground upon which had been erected a dwelling house. January 20, 1925, Sherry mortgaged this property to Osner & Mehlhorn to secure the payment of three notes in the total sum of $3,500, payable one, two and three years after date. The mortgage was recorded January 20, 1925. February 5, 1925, Osner & Mehlhorn sold the notes and mortgage to the respondent, and gave her a written assignment thereof. At the time of the purchase, all of the papers were delivered to the respondent, and she placed them in her own safe deposit vault, where they remained until after the

disappearance of August Mehlhorn in the summer or fall of 1930.

After the execution of the notes and mortgage, Sherry regularly paid the quarterly interest thereon to Osner & Mehlhorn. No attempt was made to collect the principal of the first two notes as they became due. According to the terms of the notes and mortgage, the due date of the third note was January 20, 1928. When this note became due, the respondent called Mr. Mehlhorn's attention to the fact that the mortgage was due, and that she desired its payment. She was then told by her husband that the mortgage was a good loan and had been extended. The matter continued in this way until October, 1928. In the meantime, Mehlhorn paid the quarterly interest to the respondent as it became due.

In September, 1928, Alma Hink, the appellant, who had an account with Osner & Mehlhorn, told Mr. Mehlhorn that she desired to purchase a mortgage in amount of from three to four thousand dollars. October 17, 1928, or about a month later, Mehlhorn called Sherry into his office and told him to make a new mortgage which would discharge the first. A new note and mortgage were made by Sherry on the date last mentioned, and Osner & Mehlhorn was named as the mortgagee as well as the payee of the note. On this date, October 17, Mehlhorn credited the respondent's account with $3,500, and it was stamped "paid." Following this, or a day or two later, Mehlhorn informed Mrs. Hink that he had a $3,500 mortgage for sale, and the latter went to the office of Osner & Mehlhorn. and after discussing the matter with Mr. Mehlhorn, drew her check for $3,500, and the second note and mortgage were assigned and delivered to her, which she placed in her safe deposit box.

From this time on until after Mehlhorn absconded, interest was paid regularly and quarterly by him, upon each of the mortgages, to the holder thereof, that is, to the respondent and Mrs. Hink, neither knowing of the other's mortgage. After Mehlhorn absconded, the respondent placed her assignment of the mortgage on record, and a few days later Mrs. Hink likewise recorded her assignment.

The accounts of Mrs. Hink and the respondent, upon the books of Osner & Mehlhorn, were kept in exactly the same manner. Each of them, over a period of years, had from time to time purchased mortgages, the total transactions of Mrs. Hink and her husband aggregating approximately fifty thousand dollars, and that of the respondent from twenty-five to thirty thousand dollars. Each of them, as indicated, had an account with Osner & Mehlhorn, and that corporation, through Mehlhorn, collected the interest upon whatever mortgages either the respondent or Mrs. Hink held, and accounted therefor. When a mortgage would become due, Mehlhorn would receive payment thereof, inform the one to whom it had been assigned that the payment had been received, and the mortgage and note would be gotten out of the safe deposit box and taken down to the office.

From the facts detailed, and others that might be stated, it is clear that Osner & Mehlhorn was the agent for the respondent, as well as for Mrs. Hink, for the purpose of collecting the principal and interest upon the securities which had, respectively, been sold to them. He had no authority from either to make loans or substitute new mortgages for one in existence. All the securities purchased by the respondent were her sole and separate property.

The general question presented upon the appeal is, which of the two mortgages is superior in right. This

depends upon whether the respondent's mortgage was satisfied when Mehlhorn took the second mortgage from Sherry, gave the respondent a credit upon the books for the amount thereof, and stamped the account "paid".

The appellant makes two contentions in this respect: (a) That the execution of the new note and mortgage by Sherry to Osner & Mehlhorn constituted a payment of the indebtedness to the respondent; and (b) that, if this contention is not sustained, then the taking of the new note and mortgage and its resale to Mrs. Hink on October 19 constituted "a cash collection by Mehlhorn in the exercise of his authority" as agent of the respondent.

The fact that Mehlhorn was the husband of the respondent did not give him any authority to act for her as her agent. In order to bind the wife by the acts of the husband, it is essential that she shall have previously authorized him to act as her agent, or subsequently, with knowledge of the act, ratified and adopted it. 30 C. J. 620. The evidence necessary to establish authorization or ratification by the wife of a contract made by the husband as her agent must at least be as strong and satisfactory as between independent parties. *McLaren v. Hall,* 26 Iowa 297.

In the case now before us, there are no facts from which it can be inferred that the respondent had authorized her husband to accept anything other than money in payment of the notes and mortgages, which she held, as they became due, and there are no facts from which it can be inferred that she ratified the conduct of her husband in taking the second note and mortgage from Sherry. An agent merely authorized to collect a debt has no implied power to release the debt or accept payment in anything else than money. *Corbet v. Waller,* 27 Wash. 242, 67 Pac. 567; *Wees v.*

*Page,* 47 Wash. 213, 91 Pac. 766. It follows that respondent's mortgage was not paid by the taking of the second note and mortgage from Sherry, and on the day it was taken crediting the respondent's account with the amount thereof and stamping the account "paid."

We shall now consider the second contention of the appellant, to the effect that the transaction leading up to the taking of the second note and mortgage, and the sale thereof to Mrs. Hink, constituted a cash collection by Mehlhorn. This contention cannot be sustained. Sherry made the new note and mortgage October 17. On that date, Mehlhorn credited $3,500 to the respondent's account and stamped it "paid." After this, he communicated with Mrs. Hink, and two days later, or on the 19th, sold her the second note and mortgage for the face value thereof, to-wit, the sum of $3,500, and this money was not placed to the credit of the respondent. A witness, who had been in the employ of Osner & Mehlhorn for many years as office manager and bookkeeper, testified that the books showed that the respondent on October 17 was credited with $3,500, the face value of the second note and mortgage, and on that date the ledger card was stamped "paid." He further testified that, if one knew nothing else about the matter except what appeared upon the books of Osner & Mehlhorn, the conclusion would be that the respondent's mortgage had been paid on October 17. The transaction on that date had been fully completed and the entries made on the 17th, as appears from the books, and there is nothing in the testimony to the contrary. The transaction with Mrs. Hink two days later was separate and distinct.

In the case of *Liska v. Beckmann,* 168 Wash. 489, 12 P. (2d) 599, which was a transaction which arose out of transactions with Osner & Mehlhorn almost exactly

like those in the present case, it was held that authority to a loan company to collect principal and interest on a mortgage or to grant an occasional extension, does not authorize the agent to take as payment a new mortgage payable to the agent, to be held or used by the agent for its own purposes. The only difference between that case and the one now before us is that, there, after Osner & Mehlhorn, through Mehlhorn, took the second mortgage, it was five days before a credit for the amount thereof was placed on the account of the one to whom a prior mortgage had been assigned, and it was about three months before the second mortgage was sold and the funds from such sale appropriated by Mehlhorn, as in the present case. While the time there elapsing was greater than here, that is not the controlling element. The two transactions in the present case were just as separate and independent as they were in that case.

Whether the respondent's mortgage would have been paid by a credit of $3,500 had the second mortgage been sold, delivered and paid for by Mrs. Hink on the 17th, and after it had been so paid for, the respondent's account had been credited with the amount thereof, is a question upon which we express no opinion.

The judgment will be affirmed.

BEALS, C. J., BLAKE, STEINERT, and TOLMAN, JJ., concur.